# SOCIÉTÉ ANONYME DES MINES DE LEXINGTON, A CORPORATION, RESPONDENT, *v.* OLD JORDAN MINING AND MILLING COMPANY, A CORPORATION, APPELLANT.

CONTRACT. — PLEADING.— EVIDENCE. — VARIANCE. —An allegation " that between the dates of October 22 and November 5, 1883, plaintiff and defendant, being tenants in common of a certain canal, agreed and contracted in writing, one with the other, that they would at once make the necessary repairs on said canal and thereafter keep the same in good order, make needed repairs thereon and protect the same from decay and loss, and that each of them should pay its share of the expense thereof," is supported by proof of the writing of a letter from plaintiff to defendant suggesting such an arrangement, and an answer thereto containing language which to the court and jury showed an assent thereto, although containing additional suggestions as to the work.

ID.—TERMINATION.—NOTICE.—CONFLICTING EVIDENCE.—Such a contract as a suggestion to make repairs on a canal by one cotenant to another co-tenant may be terminated by either party by notice to the other, but where the evidence upon the matter of such termination by notice is conflicting, the verdict will not be disturbed.

APPEAL from a judgment of the district court of the third district and from an order refusing a new trial, Hon. Charles S. Zane, judge. The opinion states the facts.

*Messrs. Bennett, Marshall and Bradley*, for the appellant.

*Messrs. Marshall and Royle*, for the respondent.

SMITH, J.:

This is an action by the plaintiff against the defendant to recover the sum of $4,675.98 with interest thereon from the 6th day of July, 1888, until paid, the same being one-

half of certain moneys paid out and expenses incurred by
the plaintiff in keeping in repair a certain water ditch or
canal owned jointly by the plaintiff and defendant. The
plaintiff claims that this money was paid out by it under
and pursuant to a written contract whereby the defendant
was to pay one-half of such expenses.

The allegation of the complaint as shown in the abstract
in relation to the contract is as follows: "That between
the dates of October 22 and November 5, 1883, plaintiff
and defendant, being tenants in common as aforesaid,
agreed and contracted in writing one with the other, that
they would at once make the necessary repairs on said
canal, and thereafter keep the same in good order, make
the necessary repairs thereon, and protect the same from
decay and loss, and that each of them should pay its share
of the expense thereof."

Then follows the allegation that during the years 1884,
1885, 1886 and 1887, plaintiff expended $10,345.88 in
making such repairs, and that the defendant has paid no
part thereof except the sum of $496.96, paid December
31, 1884.

The only assignment of error in the record which is
urged here is that there is no proof of this contract as
alleged; in other words, that whatever proof was admitted
to establish the contract was variant from the allegation.
The particular writings relied upon by the plaintiff to
establish the contract consist of two letters, exhibits "A"
and "B," which, omitting the address and signature, are
in substance as follows. The first addressed by plaintiff's
agent to defendant's manager is as follows:

"During my present stay in this city for the purpose of
investigating and inspecting our different pieces of prop-
erty in this Territory, my attention was particularly called
to the bad state of the Jordan water ditch, which your
and our companies own jointly. Considering that it is for

our mutual interest to see that this property should be kept in proper shape, I beg in the name of your company, if you do not judge that it would be advisable while I am here, to have an understanding regarding this matter. I suggest that the necessary repairs should be made at once, and that hereafter the ditch should be kept in good condition, both companies paying their share of the incurred expenses. Will you please be kind enough to give this matter your prompt attention and favor us with an immediate reply, etc."

This letter is dated October 24, 1883.

On October 30, 1883, the defendant, by its manager, replied as follows to plaintiff:

"Your letter of 24th inst., in regard to the necessity of entering into some arrangement for preparing to preserve the Jordan water canal owned by your company and by one I represent, is received. I agree with you that it is for our mutual interest that this property should be kept in good order, and I shall be pleased to join you in a reasonable arrangement for the purpose of protecting the property from decay, and I am very glad to find a gentleman willing to co-operate in a business way for the protection of our mutual interests. Your suggestion that the needed repairs should be done at once, and that each company should pay its share of the expense, and also for caring for the future is right, and I will direct Mr. Van Deusen, our engineer, to co-operate with you or any one you may delegate, to examine the property and report what repairs are necessary and the cost of the same. He is very trustworthy and a capable man, and I think that you will find it for our mutual advantage to get his judgment and let him make the repairs. As neither of us are using the water at present I would think it best to expend only as much as is necessary to prevent loss, and then when we are ready to use the water, then we make permanent

improvements. If you do not have time to go into details before you leave will you please leave the matter in the hands of some one who will co-operate with me and Mr. Van Deusen, unless you are willing to have him do it, each company paying one-half the expense.

"I make this suggestion because I think Mr. Van Deusen can do the work satisfactory to both, etc."

These two letters constitute the contract between the two parties, if one was made, but should be considered in the light of the subsequent correspondence between the parties, and the oral testimony given in relation thereto.

On September 24, 1884, the plaintiff, by letter to Van Deusen, reported the amount of the expenses incurred in repairing the canal up to that date. On December 14, 1884, plaintiff wrote to Holden, the manager of the defendant, stating that notwithstanding the amount of money expended that the canal would still carry no water, and that further expenditures had been made amounting to $993.93. In this letter also the plaintiff asked the co-operation of the defendant—first, towards making substantial repairs upon the canal; second, towards prosecuting trespassers on the canal. It seems that on the 31st day of December, 1884, the defendant paid one-half of the expenses, to wit, $993.93, that had been incurred up to that time. On August 27, 1885, the plaintiff again wrote the defendant to the effect that in the spring its manager, in company with Van Deusen, had examined the canal to see what repairs were indispensable, and that also that when the season became favorable for work the repairs were made in the most economical way. That the expenses for 1885 up to that time ran up to $2,000. In this letter the agent of the plaintiff asks the defendant to define in a sure way how far it, the defendant, "would stand the French company by."

On September 1, 1885, plaintiff transmitted to the defend-

ant a statement of the expenses for the year 1885, up to that date, amounting to $2,204.23, and stating that in a few days $500 more would be required to pay for repairing certain breaks.

On September 2, 1885, the defendant's manager replied to the plaintiff in this letter. Mr. Holden states that the owners of the Old Jordan Mining and Milling Company are expected in Salt Lake City early this month; that he will have them examine the canal in connection with the plaintiff's agent, and decide the matter both for the present and future expenditures. He further says that if he was using the water he would not hesitate to credit the account at once. Also that as tenants in common it is best to agree upon a line of policy by which either party would be allowed to expend money on the property, and thus bind the other to payments. He then proceeds to state that it was his intention, in his letter of October 30, 1883, to limit the expenditures, while not using the water, to such sums as would be necessary to preserve the property, and says "I do not know that you have gone outside that line."

On November 19, 1885, the defendant's manager again writes to the plaintiff to the effect that he had not been able to examine the canal before going east. That upon his return within three or four weeks he will examine it the first thing that he does. He asks for a complete statement of expenditures made by the plaintiff during the year, and that it be sent to Cleveland, Ohio, in order that he may submit it to the directors of the defendant company. He then suggests that inasmuch as the plaintiff is having the entire use of the water that the plaintiff make the necessary repairs while it has such use, and that when the defendant is ready to use the water that then they make the improvements and repairs, and closed by

saying that some such arrangement as that just suggested will no doubt be suggested by the defendant company.

On February 10th, 1886, the plaintiff, pursuant to the request of the defendant, forwarded a detailed statement of the expenses for 1885, amounting to $4025.00 to Cleveland, Ohio.

On February 16th, the defendant replied acknowledging the receipt of the statement, which it characterizes as fair and candid. The letter continues and promises to submit the estimate to the board of directors of defendant and also a repetition of the suggestion contained in the defendant's previous letter, that the plaintiff should keep up the repairs upon the canal as long as it uses the water, and that in case the defendant desired to use the water that it should expend for the benefit of the canal a like amount, or that if it found the canal in good repair that it should then pay one-half of the amount plaintiff had expended in repairing the canal. The letter closed as follows: "But the whole matter will be submitted to the management and their action on the matter reported to you. I have been delayed in returning to Utah beyond my expectations and shall not be able to reach there until the middle of March."

The next letter is dated July 30, 1887, and contains a statement of the expenditures by plaintiff upon the canal during 1886 and the first part of 1887. Also a full statement of all of the expenses up to July 30, 1887, paid out by plaintiff. This letter also requests of the defendant that it pay one-half of the expenses.

The next letter is from the plaintiff to the defendant containing the further statement of expenditures amounting to $500.

On February 11, 1888, the defendant replied to the plaintiff acknowledging the receipt of the letter of February 6th. Also asking for a complete statement of the account of plaintiff against the defendant.

On February 14 plaintiff replied to the defendant itemized account of all the expenditures upon the canal.

This completes the correspondence.

It will be seen that the subsequent letters do not modify. in any way the exhibits "A" and "B" set out at length above. The vital portion of those letters is the following. In the letter of plaintiff to defendant of October 24, the following language occurs: "I suggest that the necessary repairs should be done at once, and that hereafter the ditch should be kept in good condition, both companies paying their share of the incurred expenses." The answer is from defendant to plaintiff: "Your letter suggests that the needed repairs should be done at once, and that each company pay its share of the expenses and also for care for the future is right, and I will direct Mr. VanDeusen, our engineer, to co-operate with you, or any one you may delegate, and examine the property and report what repairs are necessary."

The subsequent letters of the defendant to the plaintiff indicate a desire on the part of the defendant to change this bargain so that the plaintiff may pay for all the repairs while it is using the water, and the defendant to pay its portion or to reimburse the plaintiff for one-half when the defendant begins to use the water. There is nothing in the testimony to indicate that the plaintiff ever agreed to this proposition in any way. On the contrary the letters above cited and all the evidence in the case shows that the plaintiff regularly and continuously demanded of the defendant one-half of the expenses incurred by it in making these repairs. There is nothing in the oral testimony to change this. It is true there is direct conflict as to whether or not the defendant ever terminated this contract by an oral notice to the plaintiff.

The court charged the jury that the plaintiff could only

recover and the defendant was only liable for one-half of the reasonable and necessary expenses upon the canal. The jury found in favor of the plaintiff for the amount claimed. It must be taken that this finding is equivalent to finding that the repairs made were necessary. The court also charged the jury upon the same subject as follows: "If you believe from the preponderance of the evidence, that the contract was made as alleged, as I have stated to you, and that the plaintiff made repairs during the time specified and that the repairs were necessary to the preservation and protection of the property, and that the defendant has been requested to pay and has refused to pay, then you should find for the plaintiff the amount of one-half of such expenditures." In view of this instruction and of the contract, there can be no question but that the jury found that the expenditures were necessary to the protection of the property.

This is a contract which either of the parties could, perhaps, have terminated by verbal notice. It is claimed upon one side and denied upon the other, that such notice was given. This was a question peculiarly for the jury, and the jury having found against the defendant, it is not proper for us to disturb it. There is no question in the case as to the amount of money expended by the plaintiff, or as to the correctness of the verdict, provided the contract sued upon was established. We think from the evidence cited above, that the contract was established, and established in the very terms in which it was alleged, to-wit: That it was a written contract made between the 22d day of October and the 5th day of November, 1883. There was nothing in the conduct of the defendants so far as is evidenced by the letters that they intended to repudiate the contract at any time. The defendant desired a modification of it, which the plaintiff did not agree to; but with-

out such modification being made, it was not claimed but that the defendant was bound by the contract in any of the letters or correspondence put in evidence.

Upon the record before us, we hold that the verdict and judgment was right, that it should be and is affirmed.

MINER, J., and BARTCH, J., concurred.